## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS,

### At the July Term, 1856.

$\frac{13}{74} \frac{9}{250}$

## MAGRUDER ET AL. VS. THE STATE BANK.

A note given to the Bank of the State of Arkansas, for a debt past due, and payable at a future day, including the interest then due and interest on the whole sum to the day of payment, is not usurious (*S. & G. Turner vs. Miller*, 1 *Eng. R.* 463.)

The Bank of the State of Arkansas permitted a debtor to renew his notes, then due, and gave him time upon his debt, in consideration that he would secure it by a mortgage upon property executed by a third person: this was a valid legal consideration for the mortgage.

Under the act of Liquidation, the Bank of the State of Arkansas was authorized to take mortgages to secure its debts: and if its officers did not strictly follow the directions of the law in taking such mortgages, they are amenable for their conduct; but this would not make the mortgage null and void.

*Appeal from Independence Circuit Court in Chancery.*

The Hon. BEAUFORT H. NEELY, Circuit Judge.

BYERS, for the appellants.

We insist, first: That the note and mortgage were executed · · upon a *usurious consideration* and void. Upon this point it is

**10** CASES IN THE SUPREME COURT

Magruder et al. vs. The State Bank. [JULY]

only necessary to refer to our *Revised Stat. p.* 614, *sec.* 1, 5, 6, 7 *and* 8. 5 *Barber S. C. Rep.* 127, and the current of authorities.

*Second,* That the Bank had no authority to make such a contract, and that it was not binding either upon the Bank or Pelham or Magruder.

A corporation has no power except what is given by its incorporating act, either expressly or incidental to its existence.

*Head & Amroy vs. Providence R. Co.,* 1 *Cond. R.* 371. *Dartmouth College vs. Woodward,* 4. *Cond. R.* 526. *Betts vs. Manard,* 1 *Breese R. Appx.* 14. *State vs. Stibbens,* 1. *Stew.* 299. *Beaty vs. Knowlton,* 4. *Peters R.* 167, 171. *Beaty vs. Marine In. Co.* 2. *Johns. R.* 109. *People vs. Utica Ins. Co. Johns. R.* 358. 7 *Wendell R.* 34. 2 *Cowen R.* 699. 2 *Barber S. C. R.* 107. 4 *Barber S. C. R.* 127.

We insist that as Pelham and his securities were solvent and able to pay, that the officers of the Bank had no authority to change the security or to take mortgages or deeds of trust. Because it was only to secure doubtful debts that they had this power.

And even if Pelham and his securities come within the "doubtful" list, and they had authority to take a mortgage, they could not extend the time beyond *two years.*

See 6th sec., Act approved 4th Jan'y, 1845; Acts of 1849, p. 72, sec. 6—1853, p. 194.

S. H. HEMPSTEAD for the appellee.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

This was a bill filed by the Bank of the State, in the Independence Circuit Court, against Charles B. Magruder, Charles H. Pelham and Miles Williams, to foreclose a mortgage.

The case made by the bill, is substantially as follows:

On the 2d of August, 1849, Charles H. Pelham executed to the Bank his writing obligatory, of that date, for $6,259 50, due at twelve months, in renewal of certain promissory notes previously made by him to the bank. At the same time, Charles B. Magruder, in consideratian of such renewal, and for the pur-

pose of securing the payment of said writing obligatory, executed to the bank, a mortgage upon the north-west quarter of sec. 9, T. 13 north, range 6 W., lying in Independence county, on Polk Bayou, and on which tract were situated the "Pelham mills," subject to the condition that, on the maturing of the writing obligatory, Pelham should have the privilege of renewing it by paying ten per cent. upon the amount due, with advance interest at seven per cent. per annum; and thus to renew from year to year, until the debt was extinguished; and if at the maturity of the bond, or any subsequent renewal thereof, Pelham should fail to renew or pay the debt, the mortgage was to become absolute, etc. That Pelham had failed to make anv renewal or payment.

That, subsequent to the mortgage, Magruder had made some conveyance of the mortgaged premises to Pelham; and that Williams occupied them as tenant, etc. Prayer for foreclosure and sale, etc.

Williams made default: Pelham demurred to the bill, and Magruder answered. Final decree in accordance with the prayer of the bill, and appeal by the defendants.

The points of defence made by the demurrer of Pelham and the answer of Magruder, will be considered together.

1. It is insisted that the mortgage debt was *usurious*.

The facts in relation to the origin of this debt, seem to be as follows:—Prior to the act of 31st January, 1843, placing the Bank in liquidation, Pelham was indebted to the Bank upon notes discounted for him, and renewed them under the provisions of the act. In such renewal, he gave his note, with W. L. McGuire, James E. Pelham and Thomas J. Carter, securities, for $4000 00, dated 1st July, 1844, due at twelve months. On the 1st October, 1844, he gave the bank another note, with the two persons last named as securities, for $1,000 00, due at twelve months, in substitution of indebtedness of Joseph H. Egner to the Bank. That some time after these notes were due, the Bank brought suits upon them, against the makers, and while the suits were pending, the Bank and Charles H. Pelham made an agreement that the two notes should be consolidated,

**12** CASES IN THE SUPREME COURT

Magruder et al. vs. The State Bank. [JULY

that Pelham should pay four years back interest at the rate of eight per cent. per annum, and a curtail of $750, and seven per cent. advance interest for one year, and that he should give a new note payable at twelve months, with the privilege of renewing at the end of each year, by paying ten per cent. curtail on the amount of the debt, and advance interest on the residue at seven per cent. per annum; to secure the payment of which note, Magruder should execute the mortgage, etc.: Thus—

| | |
|---|---:|
| The one note for | $4,000 00 |
| Interest thereon for 4 years at 8 per cent | 1,280 00 |
| The other note for | 1,000 00 |
| Interest added for 4 years at 8 per cent | 320 00 |
| Making | $6600 00 |
| Curtail on this sum | 750 00 |
| Balance due | $5,850 00 |
| Advance interest on this sum at 7 per cent | 409 50 |
| Total | $6,259 50 |

And according to the above agreement, Pelham gave the bond, and Magruder the mortgage in question to secure to the Bank the amount due to her as by the above statement.

The counsel for the appellants has not pointed out what particular feature of this contract makes it, in his judgment, usurious; nor have we been able to discover the usury.

The Bank did not charge more back interest upon the two notes of Pelham, renewed by the mortgage bond, than she was legally entitled to. The law allowed her interest at 8 per cent. upon notes payable at twelve months. (*Acts of* 1838, *p.* 11.) And where she had to put the notes in suit, as it seems she did Pelham's notes, she was authorized to collect ten per cent. (*Acts* 1837—*called session, p.* 136.) In the above statement, Pelham is charged with $1,280 on the $4,000 note, and $320 on the $1,000 note, making an aggregate back interest of $1,600. The bond and mortgage bear date 2d August, 1849. The note for $4,000 was due the 1st of July, 1845, and the interest upon it from that time to the date of the mortgage, at eight per cent.

was $1,307 52. The note for $1,000 was due 1st October, 1845, and the interest upon it, at the same rate, to the date of the mortgage, was $307 32, making an aggregate of back interest, actually due upon the two notes, at the date of the mortgage, of $1,614 84, being an excess of $15 84 above the amount of back interest with which Pelham was charged by the agreement between him and the Bank.

The curtail of $750 paid by Pelham did not extinguish the back interest by $850, and this balance of interest was included in the bond, and thus he was subjected to compound interest; but this was not usurious, as decided by this court, in *S. & G. Turner v. Miller*, 1 *Eng. R.* 463.

Pelham, instead of paying the advance interest of seven per cent., at the time of executing the bond, according to banking usage, retained it in his own hands, and inserted the amount of it ($409 50) as part of the principal in the bond, which was made payable at twelve months without interest until after due. There was surely no usury in this. It was to his advantage.

2. It is also insisted for Magruder that the mortgage was without consideration and void.

No consideration moving from the bank to him was necessary to make the mortgage valid. He had the right to bind himself in writing for the payment of Pelham's debt. The bank permitted Pelham to renew his notes, and gave him time upon the debt, in consideration that he would secure it by Magruder's mortgage. This was a valid, legal consideration for the mortgage. 2 *Kent's Com.*, 465.

3. It is insisted, moreover, that the mortgage is void, for want of power in the bank to take it.

The bank was authorized by its charter, to take mortgages as collateral security, *sec.* 6; and to loan money on mortgages upon real property. *Sec.* 20, 21, 23, 24, *Acts* 1836, *p.* 17.

By the act of 31st January, 1843, (*Acts* 1842, *p.* 77), placing the bank in liquidation, its corporate existence was not destroyed, but its powers were abridged. Its privilege to discount notes, etc., or to loan money in any manner, (*sec.* 1) was re-

pealed; but its corporate powers to collect in, and pay off its debts, and to liquidate and close up its business, were continued; (*sec.* 28. *Underhill v. State Bank*, 1 *Eng.* 135.)

By the 10th section of the act, debtors, who might come forward within ninety days after their debts were due (sec. 9,) and pay all arrearages of interest and calls, were allowed to renew their notes for one year, by giving satisfactory security, and paying interest in advance at seven per cent., and the Receivers were required so to regulate the calls on the notes, when they became due, that the debts would be paid off within ten years, by regular annual calls.

By the 12th section, the Receivers were required to keep a vigilant eye upon the debtors, and were made liable upon their official bonds, if debts were lost by neglect or carelessness on their part. And it was made their duty, " in all cases where the security was *doubtful*, to obtain, if possible, additional security: and to this end, they might, if necessary, extend the time of payment, and *take mortgages and deeds of trust, in the name of the bank, upon any property, either real or personal*," etc. And generally, " in all cases of *doubtful or insolvent debts*," the Receivers were authorized " to pursue *such a course*, and make *such arrangements* in regard to them, *as their judgment might dictate* to be most advantageous to the bank or the State."

By act of January 4th, 1845, (*Acts* 1844, *p.* 47,) the office of Executive Receiver, created by the liquidation act of 1843, was abolished, and the completion of the process of liquidation was entrusted to a Financial Receiver, and an attorney for the principal bank, and each of the branches. By the 3d section of this act, it was made the duty of the attorneys to prepare all deeds, *mortgages and other instruments of writing*, which they or the Receivers, *might deem necessary to promote the interest of the Bank, etc.*

The 6th section provides: " That it shall be the duty of said Receivers and attorneys to keep a vigilant eye upon all persons indebted to said Bank, and if any debt be lost from the evident neglect and carelessness of said officers, they, or each of them shall be held liable on their official bonds: and it shall be the

duty of said financial receivers and attorneys, in all cases where the *security is doubtful,* to obtain, if possible, additional security. To this end, they may, if necessary, *extend the time of payment not over two years, take mortgages and deeds of trust* in the *name of the bank,* upon any property, real or personal," etc., etc. * * * * * and, generally, in all cases of *doubtful or insolvent debtors,* said officers may pursue *such a course, and make such arrangements* in regard to them, as their *judgment may dictate* to be *most advantageous to the bank.*"

It is manifest from these enactments, that the bank possessed express and direct power to take mortgages for the purpose of securing the payment of debts due to her, even if this was not a power incident to her general rights as a creditor to secure and collect her debts by the ordinary legal means allowed to creditors generally.

But the counsel for the appellants takes two specific objections to the validity of the mortgage. The first is, that the bank could only take a mortgage where the *security* for the debt was *doubtful;* and it is averred in the answer of Magruder that the securities of Pelham upon the notes for which the mortgage bond was substituted, were good and solvent, and amply responsible for the debts. His counsel also insists that the depositions read upon the hearing prove this to be true; and moreover, that the mortgaged property taken as a substitute for the personal security, which the bank had before, was not worth over $2,000—not near the value of the debt.

We are not sure that the depositions prove that the officers of the bank had no grounds to *doubt* the *solvency* of Pelham's securities at the time the mortgage was taken. W. L. McGuire seems to have been regarded as the most responsible one of the securities, and yet it appears that his indebtedness, at the time, as principal and security, amounted to over $25,000, most of which was in suit; and the witnesses do not value his property at so large a sum. But let all be conceded that is claimed by the counsel for the appellants, and the argument amounts to this: the bank had safe and sufficient personal security for Pelham's debt, but her officers unwisely and by mistake, or in dis-

regard of the duties imposed on them by law, surrendered the personal security, and took Pelham's individual bond for the debt, with Magruder's mortgage upon property not worth half the amount of the debt, therefore the mortgage is null and void, and the bank must lose the only security which she now has—in other words, that by an improvident arrangement of her officers, she has lost part of her debt, and therefore she must lose it all! This can be neither good law, nor sound logic: the statement of the argument refutes it.

The *second* specific objection to the validity of the mortgage, taken by the counsel of appellants, is that it extends the time of payment for *ten years*, when, by the 6th section of the act of January 4th, 1845, above copied, the officers of the bank were not authorized to extend the time of payment, upon mortgage, more *than two years.*

This provision of the Statute must be regarded as directory, and there is no good reason, founded in public policy, why a departure from it should make the contract null and void, as in cases of contracts made in violation of the gaming or usury laws, or other laws affecting public morals.

If the officers of the Bank did not strictly follow the directions of the law in taking the mortgage, they are amenable to the appropriate authorities for their conduct, but there is no principle of law, applicable to such cases, that would warrant us in holding the mortgage to be null and void.

The decree of the court below is affirmed: and the time fixed by the court for the sale of the mortgaged property having passed, the cause will be remanded, with instructions to the court to make the necessary orders to execute the decree.