## Case No. 12,801.

SHOEMAKER v. NATIONAL MECHANICS' BANK.

[2 Abb. (U. S.) 416: [1] 1 Hughes. 101; 1 Thomp. Nat. Bank Cas. 169: 1 Balt. Law Trans. 195.]

Circuit Court, D. Maryland. March, 1869.

BANKS—SUIT BY STOCKHOLDER—MISAPPLICATION OF FUNDS—FORFEITURE OF FRANCHISE—NATIONAL BANKS—POWERS UNDER ACT OF CONGRESS—INJUNCTION.

1. A circuit court has jurisdiction, upon a proper bill filed by a stockholder of a national bank, to enjoin the officers of the bank from misapplying its funds to the prejudice of the stockholder's interest therein, by acts which are not warranted by the charter, or amount to a breach of trust.

2. The general principles which govern courts of equity in granting preliminary injunctions, and in dissolving them upon the filing of the answer,—stated.

3. A loan made by a national bank in excess of the restriction imposed by section 29 of the national banks act of June 3, 1864 (13 Stat. 99), which provides that the total liabilities to any banking association, of any borrower, shall not at any time exceed one-tenth of the capital stock,—is not void. upon that account. The loan may be enforced: though by section 53, the bank is exposed to forfeiture of its franchise, and the officers participating are declared personally liable.

[Cited in brief in Penn v. Bornman. 102 Ill. 524. 526. Cited in Weckler v. First Nat. Bank of Hagerstown. 42 Md. 587.]

See Stewart v. National Union Bank [Case No. 13,425].

4. A national bank has power to lend money upon the note or other personal obligation of the borrower secured by a pledge of stock of a corporation as collateral security.

5. Section 8 of the national banks act of June 3. 1864 (13 Stat. 101). which authorizes such banks to exercise under that act all such incidental powers as shall be necessary to carry on the business of banking. by discounting and negotiating promissory notes. &c. by receiving deposits, by buying and selling exchange, &c.,

---

[1] [Reported by Bradley T. Johnson, Esq., and here reprinted by permission.]

[1] [Reported by Benjamin Vaughan Abbott. Esq.. and here reprinted by permission.]

by loaning money on personal security, and by issuing, &c., circulating notes,—contains five distinct grants of power; and neither grant is a limitation upon any other.

6. An averment that the officers of a bank have loaned its funds to a specified person "upon the collateral security of railroad stock," does not show a violation of section 8; for the phrase "collateral security" imports a security additional to the personal obligation of the borrower; and, by the fourth of the powers conferred by section 8, the bank may loan upon personal security not embraced in the first power.

Application for an injunction.

GILES, District Judge. This bill is not filed to have the charter of defendant as a national bank declared null and void for the causes mentioned in section 53 of the act to provide a national currency, &c., passed June 3, 1864. This would not be the appropriate proceeding for such a purpose. That could only be accomplished by a suit instituted by the comptroller of the currency. But this is a bill filed by one of the stockholders in the National Mechanics' Bank of this city, to restrain the president and directors of the said bank from pursuing a course which, he alleges, is in violation of the requirements of their charter under the said act, and by which they are wasting the assets of the said bank, to the loss and injury of the complainant and its other stockholders.

Such being the object of the bill, if its allegations were admitted by the answer, or proved on final hearing to the satisfaction of the court, it would be its duty to restrain the officers of the said bank from any further misapplication of its funds which might result from any act not warranted by its charter, or which would amount to a breach of trust.

This is clear from the decision of the supreme court in the case of Dodge v. Woolsey, 18 How. [59 U. S.] 341. In that case the court says: "It is now no longer doubted, either in England or the United States, that courts of equity in both have jurisdiction over corporations, at the instance of one or more of their members, to apply preventive remedies by injunction to restrain those who administer them from doing acts which would amount to a violation of charter, or to prevent any misapplication of their capitals or profits which might result in lessening the dividends of stockholders, or the value of their shares, as either may be protected by the franchise of a corporation, if the acts intended to be done create what is in the law denominated a breach of trust."

The motion for this injunction has been heard on bill and answer. And the principle is now almost universally recognized that, where the answer denies all the circumstances upon which the equity of the bill is founded, the court will refuse the writ of injunction.

It becomes necessary, therefore, to carefully examine the bill and answer; the bill, that we may learn what are the facts which it sets forth, and on which it claims the equitable interference of the court, and the answer, that we may see if these facts are admitted or denied. Now there are many things stated in the bill, and replied to in the answer, with which we have nothing to do, on this motion. Whether the loan to Bayne, by the defendant, was made under such circumstances as will render the officers who made it responsible to the stockholders for any loss the bank may incur therefrom, can only be answered when this case comes before the court on final hearing. And it may be doubtful whether such question could even be decided on the pleadings in this case; it would seem to require a bill to be filed against the officers who made the loan individually. This is a bill against the bank in its corporate capacity. The allegations on which the preliminary injunction is asked are the following: "That in violation of said express prohibition, and in violation of the trust as aforesaid confided to its officers, the said bank and its officers lent to Bayne and Bayne & Co., of the funds or capital of the said bank, from time to time, divers sums of money, in the whole largely exceeding one-tenth of the capital stock of said bank actually paid in, and that for many months the amount of money so loaned exceeded three hundred thousand dollars." And it is further alleged that said loans were made upon collateral security of shares of stock, &c., some of which were spurious, and that among these were twelve hundred and fifty shares, purporting to be the stock of the Washington, Georgetown, & Alexandria Railroad Company, a corporation which the bill charged never had any legal existence, &c. And that said bank is joining in the prosecution of or has been made party to certain suits, touching or concerning the interests of said railroad company.

It also charges that the said defendant, by its officers and agents, has offered to pay into the circuit court of the United States for the Eastern district of Virginia the sum of twenty thousand dollars of the funds of said bank, in a cause therein depending, in which the said bank has no interest whatever, and to which it is not a party, and did actually pay in said cause two hundred dollars fees to commissioners, and did actually pay one hundred dollars to the trustees of Bayne & Co., upon some illegal and unauthorized agreement as to said securities, taken by them from Bayne, and that they are negotiating for and offering to expend the money and funds of said bank in and about the repairs and reconstruction of the bridge of the said railroad company across the Potomac river, in which said bank has no sort of interest, and cannot legally have any. Said bridge, it is estimated, will cost over one hundred thousand dollars to repair it. And it concludes with a prayer that the said bank, its officers, agents, and attorneys, may be restrained from farther prosecuting or de-

fending any one or more of said suits at the cost or charge or in the name of said bank.

The answer admits that Bayne & Co. did pledge with its cashier, early in the month of February, 1866, as collateral security for its money loaned and advanced to the said firm, one thousand two hundred and fifty shares of the capital stock of said railroad company, of the par value of one hundred dollars each, and that the trustees of Bayne & Co. did subsequently, for one hundred dollars, assign all the equity of redemption of said stock to the cashier of this defendant.

It also admits that as a holder of stock of the said railroad company, it did agree with certain stockholders of said company to advance a portion of the sum of twenty thousand dollars, which was offered to be paid into the circuit court of the United States for the Eastern district of Virginia, in a cause in which the said railroad company and others were defendants, and Adams Express Company was complainant, to abide the decision of said cause, with the purpose of preventing the said railroad from passing into the hands of a receiver, to be appointed by said court; but said offer was refused by said court, and no money was paid on account thereof, and that this defendant was to have been adequately secured if said money had been actually advanced, and that it did advance about forty dollars, part of defendant's commissioners' fees, in said cause. And this defendant denies that it is negotiating or offering to expend its money or funds in the repair and reconstruction of the railroad bridge across the Potomac. It also denies that it, or any of its officers, at the time said stock was issued in the name of its cashier, or previous thereto, had any knowledge or good reason to believe that the said railroad company had no legal existence, or that the certificates were fraudulently issued, but that as late as May, 1866, the stock of the said railroad company was held and esteemed as a valuable stock, at par or over par, and that as late as the middle of May, 1866, large loans were effected upon the pledge of its certificates of stock at or about par.

Now, the only fact admitted in the answer, pertinent to the present inquiry, is that the defendant did receive from Bayne & Co. a pledge of the railroad stock as collateral security for loans made to said firm, and that said bank is now, in company with other stockholders of said railroad, engaged in suits, upon whose final decision depends the very existence of said road and the value of its stock. Will these facts warrant the granting of a preliminary injunction? Now, the granting or refusing of an injunction is a matter resting in the sound discretion of a court of equity. It is one of the highest powers confided to a court of equity, and its exercise ought, therefore, to be guarded with extreme caution, and the remedy applied only in very clear cases.

As to the first charge in this bill against the defendant, in reference to the amount loaned to Bayne & Co., in violation of section 29 of the act of congress passed June 3, 1864, (under which act the defendant became a national bank), I would only say that the loan made under such circumstances is not void—it can be enforced as any other loan made by the bank. This I apprehend is clear, from the fact that section 29 provides no penalty for its violation, and section 53 of the same act, for all violations of the provisions of the said act, provides two penalties: First, a forfeiture of the privileges and franchises of the said bank, derived from the said act, to be adjudged in a suit brought for that purpose in the federal court; and second, a personal liability by every officer of a bank who participated in or assented to such violation, for all damages which the bank may sustain in consequence thereof.

Indeed, this clause was not pressed in the very able argument of the learned counsel who closed on behalf of complainant. The point so forcibly made by him was that the defendant was prohibited by its charter from making this loan on a pledge of stock, and if so, no title to this stock passed from Bayne & Co. to the defendant. Clearly, if the defendant's title to this stock depended on a purchase as an investment by it, such purchase would be beyond its corporate powers, and void. The learned counsel, however, contended, that by the true construction of section 8, this loan was not embraced among the enumerated powers of the bank,—"that no loans are valid except those made on personal security." The language of that section is, "and exercise under this act all such incidental powers as shall be necessary to carry on the business of banking, by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt, by receiving deposits, by buying and selling exchange, coin, and bullion, by loaning money on personal security, by obtaining, issuing, and circulating notes, according to the provisions of this act."

I understand that the language I have quoted contains five distinct grants of power, and that no one grant is a limitation on any other. By the first, the bank is authorized to discount promissory notes, drafts, bills of exchange, and other evidences of debt; second, to receive deposits; third, to buy and sell exchange, coin, and bullion; fourth, to loan money on personal security (I understand by this, on any other personal security than is mentioned in the first grant); fifth, to obtain, issue, and circulate the national currency. If I am right in this construction, then the loan to Bayne & Co. was authorized by the said section, as the charge in the bill is that the loans to Bayne & Co. were made upon paper evidences of debt; upon bonds, notes, checks, &c.; and upon collateral security of stocks. &c.; and the answer states that the stock in said railroad was pledged with its cashier as collateral

security for its money loaned. If collateral security, then collateral to personal responsibility of Bayne & Co., on the notes, checks, and bills of exchange, cashed for said·firm by this defendant;· for collateral security in bank phraseology means some security additional·to the personal obligation of the borrower. But admit that this construction is doubtful, it is not so doubtful as that construction which would limit the banks to the power of loaning money only ·on personal security, and deny· to them ·the power of taking a pledge of stock as collateral security for notes or bills of exchange cashed by them. And, as I .said before, a court of equity should ·never· grant a preliminary injunction in a doubtful case.

However, I have no doubt that the taking this ;collateral security from Bayne & Co. was a valid transaction, and whether it will ever avail the defendant anything, ·will depend upon the decisions of those tribunals before whom is now pending the question of the validity of the charter of the said railroad company, and the character of its stock.

The preliminary injunction asked for in this case is refused.

For authorities to sustain the view I have taken of the law governing this case, I refer to the following cases: Bates v. Bank of Alabama, 2 Ala. 462; Magruder v. State Bank, 18 Ark. 9; Bank of Middlebury v. Bingham. 33 Vt. 636; Farmers' Bank v. Burchard, Id. 348; and Rock River Bank v. Sherwood, 10 Wis. 230,

. Injunction refused.