# CASES

## ARGUED AND DETERMINED

#### IN THE

# SUPREME COURT OF MINNESOTA.

## JULY TERM, 1863.

---

Agnes Foster, Respondent, *vs.* Peter Berkey, *et als.*, Appellants.

### APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

A chattel mortgage executed in 1859, and filed pursuant to the provisions of *chap.* 22, *Comp. Stat., p.* 848, does not require renewing or refiling under the act of March 6, 1860. That act only relates to mortgages thereafter executed.

F loaned S certain sums of money, and some time thereafter S executed a chattel mortgage to the wife of F, as security for the loan. Afterwards, and before the mortgagee brought suit to recover the possession of the property mortgaged, F died. *Held,* That S. was not incompetent as a witness under the provisions of the act of March 8th, 1861, in a suit to recover possession of the property.

And in such case notes given as evidence of and for the amount of the loan, and being for the same amount named as the consideration of the mortgage, may be received in evidence to show a consideration for the sale or grant named in the instrument. It is not necessary in order to the validity of the mortgage, that the consideration should move from the mortgagee.

The Plaintiff claimed part of the property under a sale from B evidenced by a written contract. There was evidence tending to show that S had furnished the consideration, or a part of the same, named in the contract between Plaintiff and B, by a mortgage of his homestead, and by conveying land to Plaintiff, for which she advanced no money, the consideration being the loan above named by F to S. The Defendants claimed as creditors of S, under process against him. *Held,* That it was properly a question for the jury to determine upon the evidence, whether the fraudulent intent presumed by law in such cases had been disproved.

In a suit brought to recover possession of personal property, where by stipulation, the title only was in issue, there was no error in excluding evidence of the value of the same.

Points and Authorities of Appellants.

The motion for a new trial in the case was improperly over-ruled.

I.—The Court erred in admitting in evidence the chattel mortgage from Charles Symonds to the Plaintiff, because it never was filed, and the filing of it renewed in the proper office, as by law required ; nor was it shown to have been executed in good faith and not for fraudulent purposes, as against creditors, nor for any consideration. But it clearly appears that said Symonds was not, at the date of said mortgage, nor for years thereafter indebted to said Plaintiff, in any sum whatever. It was therefore without consideration and void as to creditors, the mortgagor continuing in possession of the property, or resuming possession after a pretended delivery. *Lienau vs. Moran et al.*, 5 *Minn.*, 482; 15 *Wend.*, 244; 6 *Hill.*, 433.

II.—The witness, Charles Symonds, was incompetent to give any evidence relating to any contract made by him with Flavel Foster, (who had deceased,) under our statute approved March 8th, 1861, restricting the competency of witnesses. *See folios* 34, 35, *of the case*; *Laws of* 1861, *p.* 148.

III.—The Court erred in allowing in evidence the three promissory notes described in folios 36, 37, made by Charles Symonds, to the order of Flavel Foster, because the mortgage recites that it was given to secure an indebtedness to Agnes Foster, and cannot be contradicted or varied, nor can it be shown to have been executed for any other or different consideration than that mentioned in the mortgage.

And these notes had never been endorsed by said Flavel Foster, and were not shown to belong to said Plaintiff; but were shown to belong to the estate of said Flavel Foster, the payee thereof, and no consideration could be shown outside of the mortgage. 12 *Wend.*, 61; 5 *Minn.*, 178; 1 *Cow.*, 250; 1 *Johns.*, 139; 5 *Cow.*, 173; 4 *Cow.*, 431; 3 *Johns.*, 509; 18 *Johns.*, 45; 7 *Johns.*, 341; 2 *Phil. Ev.*, 4 *Am. ed.*, *p.* 656, *note*

IV.—The case shows (*see folios* 65, 66, 67, 78) that said Charles Symonds paid the entire consideration of the convey-

ance from the Bettingers to Agnes Foster. Charles Symonds furnished the real estate and the one thousand dollars, which formed such consideration. Such conveyance was, therefore, fraudulent in law as against the creditors of the persons paying the considerations and by consequence, said Agnes Foster, this Plaintiff, could not claim, and was not entitled to any of the property mentioned in the Bettinger agreement, and had no right or title in or to the same, since said agreement and conveyance were fraudulent and void, and this Plaintiff had full notice thereof. *Com. Stat.*, secs. 7 *and* 8, *p.* 382.

V.—The Plaintiff in this case expressly stated and testified upon the trial thereof (*see folio* 87 *of the case*) that she had no other claim upon the property described in her complaint in this action, than said chattel mortgage, which is given, commencing in folio 29 of this case, and does not include any of the property mentioned in the Bettinger agreement, which was made long after the said mortgage, nor any of the property obtained from the Bettingers, nor any part of the 1500 tons of ice, worth three dollars per ton, which is mentioned in folio 63, and was secured and put up with the money and means of said Charles Symonds, and by his orders upon I. P. Wright, drawn against a lot of land belonging to said Symonds, and by him caused to be conveyed to said Wright for such purpose. (*See folios* 59, 62, 63.)

VI.—The Court erred in excluding the evidence offered by Defendant's counsel, on the trial of this cause, on folio 186-87, to show that the Plaintiff had filed said chattel mortgage on the 27th day of June, 1861, in the office of the clerk of the city of Saint Paul, and that said Plaintiff thereby brought the said mortgage within the operation of the law passed March 6, 1860, relating to the filing of chattel mortgages, and that said Plaintiff neglected to re-file the same in one year thereafter, to wit, on the 27th day of June, 1862, whereby the same became void by law.

VII.—The Court erred in excluding the sworn statement of said Charles Symonds of the value of the horses mentioned in said complaint, and some other property in controversy in this case, commencing on folio 198 of the case, and made by said Symonds for purposes of taxation.

VIII.—The Court erred in charging the jury that, if they found the promissory notes were transferred at the time the chattel mortgage was given, or at any time before the commencement of this action, it was sufficient. (*See folio* 221.) And, also, in all that portion of his charge to the jury, relating to the consideration for said chattel mortgage, and in his theory of the law of this case.

## Points and Authorities for Respondent.

I.—Plaintiff claims title partly through a chattel mortgage, partly through the Bettinger purchase, and partly through accumulations. These are attacked for fraud. We do not wish to argue this case a third time on its merits—a just discrimination between the province of the court and jury will render it needless. Unless there is a serious conflict of evidence, an overwhelming preponderance of evidence in favor of the Defendants, such as to show that both judge and jury utterly mistook the case, then the verdict should not be disturbed. Parties should not have three trials on the merits. Nothing, then but errors of law, in admission or exclusion of evidence, or in charge, can be reviewed here. *Pross vs. Dahl*; *Caldwell vs. Bruggerman*; *Knowles vs. Fergerson*, late cases; 6 *Minn.*, 160; 5 *Minn.*, 171, 339, 345; 2 *Minn.*, 248; 5 *Barb.*, *S.C.*, 560; 7 *Barb.*, *S.C.*, 271; 12 *Barb. S.C.*, 336; 4 *Minn.*, 282; 5 *Minn.*, 119.

II.—The chattel mortgage being duly executed, *Comp. Stat.*, 680, *sec.* 80, and filed, *Comp. Stat.*, *p.* 343, according to law in force at its date, 3 *Minn.*, 53; 5 *Minn.*, 482, Plaintiff had only to rebut the *prima facie* inference of fraud arising from want of actual and continued change of possession, 5 *Minn.*, 482, by showing that it was made to secure a *bona fide* valid existing debt of Symonds. The jury thought this was done. The execution, delivery and filing the mortgage reciting that Symonds then owed Plaintiff the $7,500 debt, with the knowledge and approval of Mr. Foster, operated as he unmistakably intended, by estoppel *in pais*, as an advancement and gift of the claim to Plaintiff. Hence no manual delivery or endorsement of the notes was essential

to pass title. 7 *Minn.*, 107 ; otherwise Symonds' debt is doubled to $1,500, &c. 3 *Hill*, 215; 6 *Minn.*, 204-213; 6 *Minn.*, 513. There is, then, " some evidence " on which to predicate such a transfer. 32 *Barb. S.C.*, 636; 5 *Minn.*, 139, 345. Hence the charge in reference to transfer and conside. ration was correct. Notice, Defendants are not parties to, but are attacking this mortgage—they are not bound by it, not estopped. The testimony offered of the replevy did not con. nect Plaintiff with it. Besides, the copy filed showed the true date, and law governing it—it was nugatory and a mistake.

III.—The Bettinger purchase was attacked on trial for fraud generally, more especially under *Comp. Stat.*, *p.* 382, *sec.* 7 *and* 8. The jury found, necessarily, that the " fraudulent in. tent " presumed by law was " disproved," and hence no trust resulted, &c. On this branch of the case the only question properly here is, was there sufficient " some" evidence to sustain the verdict on this point within the cases cited under our first point.

IV.—The answer of Plaintiff in *fol.* 87, was no mere mistake, arising from misapprehension of what Defendant's counsel was asking about. She had no other title to mort- gaged property ; she meant to say she had spoken of nothing else and then intended to speak of nothing else. Peckham commenced this case (*see record*) ; Brisbin knew nothing of it when he took his testimony, nor until it came out on trial as usual.

V.—The tax statement related only to damages not in issue, and is now immaterial. No rebonding took place, it was in- competent to contradict Symonds by it when they had made him their own witness, and while he was ours his attention was not called to it. *Greenl.*, *sec.* 462.

VI.—These issues are for the jury. The Judge below was satisfied with their finding. The whole cause shows Symonds an honest man, and always trying to work out of debt ; no case of fraud appeared. Mrs. Foster has about $10,000 in this property, which is worth about $5,000. Defendants did not say they had ever given Symonds credit, being misled by his possession ; and Berkey knew of the facts for years. They levied in a day or two after the new filing ran out, but forgot

that it was filed in the Register's office, and was dated A.D. 1859. Very sharp men sometimes stumble.

MORRIS LAMPREY, Counsel for Appellants.

BRISBIN & WARNER, Counsel for Respondent.

*By the Court.*—ATWATER, J.—Agnes Foster brought an action to recover the possession of certain personal property claimed by her, and alleged to have been wrongfully taken and detained by Defendants. The Defendants admitted the taking, and justified under certain executions against one Charles Symonds, to whom the answer alleged the property belonged at the time of the seizure. There was a jury trial and verdict for a return of most of the property to the Plaintiff. The Defendants moved for a new trial, which motion was denied, and from the order entered thereon the Defendants appeal to this Court.

Upon the trial of the cause, the Plaintiff offered in evidence a chattel mortgage from Charles Symonds and wife to Plaintiff, dated November 8th, 1859, and describing a part of the property named in the complaint. By an endorsement on the same, it appeared to have been filed in the office of the Register of Deeds of Ramsey county, November 23rd, 1859. The Defendants objected to the introduction of the instrument in evidence, on the grounds, among others, that it did not appear that it was filed in the proper office at any time, and that it was not shown to have been executed in good faith, and not for the purpose of defrauding the creditors of Charles Symonds. The objection was overruled, and the paper allowed to be read in evidence.

The law in force with regard to the filing of chattel mortgages at the time of the execution of this mortgage (*Comp. Stat.*, *p.* 348, *secs.* 3) required the mortgage, or a copy thereof, to be filed in the office of the Register of Deeds of the county where the mortgagor resided, &c. This law was changed by the act of March 7th, 1860, (*Sess. Laws*, 1860, *p.* 189,) by which chattel mortgages were required to be filed in the office of the town clerk of the town or city where the mort-

gagor resided, &c., and was required to be renewed within thirty days next preceding the expiration of one year from the filing thereof.

This act, we think, cannot have a retrospective effect, so as to affect mortgages given and filed previous to its passage. By the first section of the act, it is confined to mortgages "hereafter made," and the second section requires every "such instrument" to be filed with the town clerk, &c. ; nor is there any provision in the act requiring mortgages filed under the provisions of the former law, to be re-filed in accordance with the provisions of the act of 1860. And so in regard to renewing mortgages, section 3 limits the obligation to " every mortgage filed in pursuance of this act." The whole tenor of the act seems to relate to mortgages thereafter executed, and to have no effect upon such as had been previously filed.

With regard to the further objection that the mortgage was not shown to have been made in good faith, and not for the purpose of defrauding the creditors of Symonds, at most it was an objection pertaining to the order of proof, which rests in the discretion of the Court, which will not be interfered with unless an abuse of the same appears. The natural order of proof would be that here adopted, by first offering the mortgage, and then such facts as were competent and properly connected with it.

Charles Symonds was sworn as a witness on the part of the Plaintiff, and testified that he was one of the signers of the mortgage introduced in evidence. The Plaintiff here admitted in open court that the consideration of said mortgage was advanced by Flavel Foster alone, and that said Flavel died and deceased August 1, 1861. The Defendants thereupon objected to the witness, Symonds, upon the ground that he was one of the original parties to the contract, the other party. to which had died, and therefore incompetent as a witness in this cause as to the promissory notes shown to witness by Plaintiff's counsel. These were three notes executed by Symonds in favor of Flavel Foster, for the aggregate sum of $7,500,the amount of the consideration named in the mortgage.

*Chap.* 36 *Sess. Laws*, 1861, *p.* 148, provides that where one

of the original parties to the contract or cause of action in issue and on trial, is dead, or is shown to the Court to be insane, the other party shall not be admitted to testify in his own favor, &c.  The cause of action here in issue was the title or right of possession of the property described in the mortgage.  The nominal parties at least to that mortgage were Agnes Foster and Charles Symonds.  It appears, however, in the same connection that another person, who at the time of the trial was dead, had originally furnished the consideration upon which the mortgage was based.  Does this fact necessarily make him a party to the contract between the Plaintiff and witness, as evidenced by the mortgage?  We think not. The loan of the money by Flavel Foster to Symonds, was some time anterior to, and a distinct transaction from giving the mortgage.  That loan, it would seem, was evidenced by three promissory notes to Flavel Foster.  To whom these notes belonged, at the time this objection was made, did not appear.  The mortgage was a contract of sale of certain personal property to Agnes Foster to secure a debt.  That contract, no other person than the Plaintiff, or some one acquiring her legal interest, could enforce.  The representatives of Flavel Foster, deceased, could not enforce it, nor could he if living do so, by virtue of his having furnished the original consideration, since there is no privity of contract between him and the mortgagor with reference to this property.  There was therefore no error in overruling the objection of Defendants to this witness on the ground stated.

The counsel for the Plaintiff then offered in evidence three promissory notes, made by Charles Symonds in favor of Flavel Foster, or order, one for $5,000, dated April 1, 1854 ; one for $1,500, dated Sept. 12, 1859, and one for $1,000, dated Oct. 11, 1857, each due one day after date.  The Defendants objected to this evidence as incompetent, immaterial, and irrelevant, the notes having been made payable to Flavel Foster or order, and not endorsed by him.  And further, it is here urged that the mortgage recites that it was given to secure an indebtedness to Agnes Foster, and cannot be contradicted or varied, nor can it be shown to have been executed for any other or different consideration than that mentioned in

the mortgage. The evidence was received, under exception by Defendants.

I do not see how the introduction of these notes in evidence would contradict or vary the consideration named in the mortgage. That recites that the mortgagor is indebted to Plaintiff in the sum of $7,500. The principal of the notes amounted to that sum, which would be considerably increased by computing interest on them to the date of the mortgage. If the notes belonged to the Plaintiff, and constituted the consideration of the mortgage, it could not vary the latter or contradict it, by showing that more was due upon the notes than was expressed in the mortgage. The parties might agree upon the security of a whole or a part of the debt due the Plaintiff. The Plaintiff must show a sufficient consideration for the mortgage, and properly connect herself with it; and if these notes constituted that consideration, she could only do so by introducing the notes in the first instance, to be followed by other competent evidence relating thereto.

Although the evidence be not incompetent on this ground, yet, if the Plaintiff could only acquire title to the notes through the endorsement of Flavel Foster, the payee, the objection would still hold good against receiving this testimony. But in *Pease, Chalfant & Co. vs. Rush, Pratt et als.*, 2 *Minn.*, 107, it was held that a promissory note can be transferred by mere delivery, so as to pass the title and the right to sue in the name of the holder; although a note payable to order passed without endorsement, is not taken in the regular course of business, and is subject to the same disabilities as if it had been taken after due; but the title passes sufficiently to maintain a suit in the name of the owner. The objection to the evidence was, therefore, not well taken, and the Court below committed no error in receiving it.

Upon the trial of the cause the Plaintiff introduced in evidence a written agreement between John C. and Anton Bettinger, of the first part, and Agnes Foster, by which the Bettingers agreed to sell the Plaintiff all their interest in the ice business in St. Paul, including ice in ice houses, ice tools, wagon boxes, &c. The consideration for the sale was one thousand dollars cash, and a conveyance to be executed by

Plaintiff to the Bettingers of some two hundred acres of land described in the agreement. A part of the property which this action was brought to recover was claimed by Plaintiff, by virtue of this purchase from the Bettingers. This agreement was dated November 26, 1860.

It appeared from the evidence of the witness, Symonds, that the real estate which formed a part of the consideration of the contract above named, was conveyed by Symonds to Plaintiff at about the same time that the chattel mortgage was executed. It further appeared that the Plaintiff herself never advanced or paid Symonds any money as a consideration for this conveyance. The conveyance of these, with other lands, was by warranty deed from Symonds and wife to Agnes Foster, and the consideration named in the deed was seven thousand five hundred dollars. It would seem from the whole evidence that this conveyance, though absolute on its face, was intended as security for the money advanced by Flavel Foster. Symonds states that the lands were to be reconveyed to him on payment of the notes. He also states that the one thousand dollars paid on the Bettinger contract was from money raised by him on a mortgage of his homestead.

The counsel for the Defendant here urges that Symonds paid the entire consideration of the conveyance from the Bettingers to Agnes Foster, and that such conveyance was fraudulent in law as against the creditors of the person paying the consideration, and that therefore the Plaintiff could claim no right or title in any of the property which said agreement purported to convey to her.

*Sec.* 7, *Comp. Stat., p.* 382, provides that when a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made, but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section.

The following section provides that every such conveyance shall be presumed fraudulent as against the creditors of the person paying the consideration; and when a fraudulent in-

tent is not disproved, a trust shall result in favor of such creditors to the extent that may be necessary to satisfy their just demands.

Admitting the fact to be as claimed by Defendants, that Symonds paid the consideration for the conveyance from the Bettingers to Agnes Foster, the only ground upon which this Court would be justified in holding that conveyance void, would be that there was no evidence before the jury to disprove the fraudulent intent presumed by the law to exist in such circumstances. The question does not arise upon the pleadings, and indeed the answer does not show that the Defendants, or any persons, were creditors of Symonds at the time of this conveyance by him to Mrs. Foster. And under the stipulation in the case, " that the Defendants shall plead but one plea, which shall admit the taking, notice and detention alleged in the complaint, and shall justify said taking on the sole ground of process against Charles Symonds, and that the property belonged to him, and that he had the right of possession to the same at the time of the levy, it is very questionable whether this objection can be raised. For the statute above cited declares that in a conveyance made under the circumstances stated, the title shall vest in the person named as the alienee, which title would, of course, draw with it the right of possession. Admitting, therefore, the facts claimed, and the consequent fraudulent intent presumed by the law under this statute, yet by the same statute Symonds can claim no title or right of possession, either to the lands conveyed to Plaintiff by him, or to the property for which those lands were exchanged,by virtue of those agreements and conveyances. The creditors of Symonds might, under certain circumstances, reach the title which was in Mrs. Foster, but not on the ground that the title and right of possession was still in Symonds, but of fraud in conveying title to her. But at all events, in view of this statute and of the stipulation and evidence, this Court would not be justified in declaring the conveyances above referred to, void for fraud, save upon the ground that there was no evidence from which the jury could find that the fraudulent intent was disproved. The case shows that much evidence was elicited upon the trial of the

cause, bearing upon the question of fraud, both generally and as affected by this statute, and the question was properly one for the consideration and determination of the jury.

Upon the question of evidence, were it the province of this Court to decide the case upon the testimony here presented, we might arrive at a different conclusion from that reached by the jury. There are many circumstances tending to show that the transfers from Symonds to Plaintiffs were not *bona fide*, and were intended as a cover, and to place his property beyond the reach of creditors. But it is also true that there was some evidence from which the jury might have come to the conclusion that such was not the purpose of Symonds. The evidence is uncontradicted that he received as a loan from Flavel Foster, the husband of Plaintiff, the sum of $7,500. The property conveyed to Plaintiff, he states, was so done as security for this debt, and the one thousand dollars paid by him on the Bettinger contract was raised from property not subject to execution. These facts, with some others of like nature not necessary to be enumerated, were proper for the consideration of the jury in determining the question of intent. And though we may deem the preponderance of testimony to be against the finding of the jury, we deem it best to adhere to the settled rule, upon which we have acted in like cases which have been brought before this Court, and not set aside the verdict where there is some evidence to sustain it. Probably such a rule of law could not have obtained under circumstances such as exist at present in this country, but we believe the remedy for the evil is rather by application to the legislative department and the correction of public sentiment, than through a court of review.

Upon the trial of the cause the Defendants offered in evidence the sworn statement of Charles Symonds to a list of property and the value of the same, made out for purposes of taxation by Symonds. This was objected to by Plaintiff as incompetent and immaterial. The paper was admitted in evidence, except that part relating to the value of the property therein mentioned. The Defendants claim that the Court erred in not permitting the whole contents of the paper to be given in evidence.

By the stipulation which forms a part of the case, it was agreed " that the issuing of affidavit and bond, as provided by statute, to obtain possession of personal property, be waived, and the property claimed in the complaint is delivered to said Plaintiff the same as if the said means had been used, and that the Defendants shall not re-bond."

In an action for the recovery of personal property, the question of the value thereof only becomes material where the property itself cannot be recovered, or perhaps in some cases in connection with the question of damages. Here it appears that the Plaintiff had possession of the property named in the complaint at the time of the trial, and the stipulation also waived all claim for damages on the part of the Plaintiff. The proof of the value of these articles was therefore not material, and for this reason, and also because the proper foundation had not been laid, the statement could not be introduced for the purpose of impeaching the witness.

The case contains some four pages of the charge of the Judge to the jury, covering all the main features of the case, and embracing several distinct propositions, and stating the application of the law to the facts as they might be found. To this charge the counsel for the Defendants objected in manner following, viz.: " the Defendant's counsel then and there duly objected and excepted to each and every part and portion of the instructions and charges as aforesaid, so given to the jury by his Honor the Judge, as aforesaid, and to all which, and so far as the same relates to the consideration for said chattel mortgage, and to the transfer and possession of the three promissory notes put in evidence in this cause to show a consideration for such mortgage, and excepted to said charge, all and singular and severally."

In *Castner et al. vs. Steamboat Dr. Franklin*, 1 *Minn.*, 73, it was held that where counsel requests the Court to charge the jury on a number of propositions collectively, and the Court refuse to charge as requested, if any one of the propositions is not correct, error will not lie for such refusal. That counsel must state the precise point which he wishes decided and if the decision is against him, he must except to it specifically. And it was also held the same rule is applicable to

the charge actually given. A general exception to his charge does not bring up any particular remark made by the Judge, or any omission in such charge, unless his attention was directed to the point at the time. The error, if any, must be particularly pointed out.

The correctness of the principle above stated will scarcely be questioned, and we deem it applicable to the objection and exception made to the charge in this case. For though the exception in terms is " to each and every part and portion of the instructions and charges," yet it will be readily seen that this form of exception in no manner relieves it from the objections to be urged against a general exception, as stated in the case above cited. Here was a lengthy charge given by the Judge, upon several distinct subjects, and some at least, if not all the propositions stated by the Court, were certainly correct. In such circumstances it is not to be permitted that counsel, upon the mere statement that he objects and excepts to each part and portion of the charge, should afterwards, at his leisure, take up and analyze the same, and if errors are discovered in any portion of the charge, urge the same before a court of review, as ground for a new trial. It is only in regard to such portions of the charge as have been at the time specifically mentioned and pointed out to the Judge, that this Court will determine whether the instruction was erroneous. In this case there was one portion of the charge to which the attention of the Court was particularly directed, as appears from the exception, and the correctness of that may be properly considered. In regard to the mortgage and notes, the Judge charged, that "it is incumbent on the Plaintiff to show a consideration for the mortgage, and that it was properly made and filed. It is not necessary that the consideration should move from the party to whom the mortgage is given. Three promissory notes have been put in evidence by the Plaintiff, payable to the order of Flavel Foster. If you find that those notes were transferred at the time the chattel mortgage was given, or at any time before the commencement of this action, it is sufficient. This the Plaintiff must show."

If the notes were transferred at or previous to the time the mortgage was given, we see no objection that could be urged

against the right of the Plaintiff to claim title to the property under the mortgage, and if there is any error in the instruction, it must be with relation to the clause authorizing the jury to find a transfer at any time before the commencement of suit. The inquiry in regard to this, involves the question of the validity of a mortgage given to secure a debt which is not owned, at the time of the giving the mortgage, by the mortgagee. If the mortgagee, under such an instrument, cannot assert title to the mortgaged property (though owning the debt at the time of commencing suit,) it would seem to be upon the ground that such mortgage was void *ab origine*.

But suppose Symonds were Defendant in this suit to establish title in the mortgagee, upon what ground could he avoid the mortgage? No accident, fraud, or mistake is alleged or claimed in regard to the execution of the instrument—would he be permitted to urge that the instrument was invalid, because at the time of the execution of the same, the debt was owned by a third party? It would seem that it would be a matter of indifference to him who held the security, so long as he received the benefit of it, if reduced to possession by the mortgagee, by having the avails of the same applied on his debt. And the grant in this case is made upon condition that this shall be done. Even if such plea could be entertained against the recital of the mortgage, that the debt was due the Plaintiff, it is difficult to see how it would furnish any defence to an action by the mortgagee for possesion of the property, even in case the mortgagee at the time of bringing suit did not own the debt. No question here arises as to the application of the avails of the security, but simply as to the validity of the instrument, and whether the mortgagee is bound by it. No rule of law or authorities have been cited, showing that a mortgage given under such circumstances is not binding upon the mortgagor.

But if the mortgage is valid as to Symonds, it must be so also as against his creditors, (unless vitiated by fraud,) since they must claim under him, and can only enforce their process against his property. And this, as appears from the stipulation, was the only issue in the case, whether the property belonged to Plaintiff or Symonds. If to the latter, then the

claim of the Defendants as creditors would hold good. The jury have probably found that Symonds actually received the consideration named in the mortgage, and we are not prepared to hold the instrument void, either on the ground that the consideration named in the same was not furnished by Plaintiff, or that the mortgagee did not own the debt which the mortgage was given to secure at the time of giving the instrument. It may be added that there was evidence tending to show that the mortgage was executed to Plaintiff at the wish, or by consent of Flavel Foster, who furnished the consideration. This circumstance, however, perhaps would only become material in case of claim by Flavel Foster or his representatives, as owners of the debt, or as affecting the *bona fides* of the transaction.

The order denying a new trial is affirmed.