HINCKS *et al. v.* FIELD *et al.*

(*Supreme Court, General Term, First Department.* April 17, 1891.)

</div>

1. RECORD ON APPEAL—REVIEW.

When the court finds an exception to a refusal to find of the trial court, in the record of a case, it will not disregard it, although it appears not to have been made until the making up of the case and exceptions upon appeal; at which time the party objecting to the appearance of the exception in the case should have moved to have it resettled or amended in that regard.

2. CHATTEL MORTGAGE—VALIDITY.
    The fact that the plaintiffs, in lending money to A. upon his note, accepted a mortgage on the chattels of B. as security, cannot affect the validity of the mortgage, as against the creditors of B.; it being immaterial to the holder of the security what disposition was made of the money loaned.

3. SAME—ON STOCK OF GOODS.
    The plaintiffs, in making a loan secured by mortgage on a stock of goods, inserted a provision that the mortgagors should thereafter execute and deliver a further mortgage upon all replenishments and extensions of the stock thereafter made. *Held*, that said provision contemplated merely the substitution of stock bought with the avails of sales of the mortgaged stock in its place, and was not fraudulent or invalid as to the creditors of the mortgagors for goods sold them subsequent to the execution of the mortgage. Following *Brackett* v. *Harvey*, 91 N. Y. 214.

4. SAME—SALES BY MORTGAGOR.
    The rule that an understanding between the parties which permits a mortgagor to sell the mortgaged property, and receive the proceeds for his own benefit, is fraudulent as to the creditors of the latter, has no application to a case in which a mortgage was executed upon a stock of goods to secure a loan, it being intended at the time that the business should be sold, or, if continued, that it should be for the purpose of placing it in better condition for a sale in bulk; nor where the proof failed to show that the mortgagor continued to sell the property with the knowledge or consent of the mortgagee.

5. SAME—CONSIDERATION.
    Where a first mortgage contains a provision that, if it shall prove ineffectual for the purposes intended, a second shall be executed in its place, the consideration of the first is sufficient to support the second mortgage, made in pursuance of such provision.

Appeal from circuit court, New York county.

Action by Enoch P. Hincks and others against Aaron Field and another, to recover possession of certain personal property claimed by the plaintiffs under a chattel mortgage executed to the plaintiffs by the firm of L. D. Goldsbury's Sons on the 30th day of August, 1889. On the 11th September, 1889, defendants obtained a warrant of attachment against the property of the firm of L. D. Goldsbury's Sons, under which the sheriff of the city and county of New York levied upon and took possession of the goods described in said mortgage, upon the alleged ground that said mortgage was fraudulent and void as to the creditors of said firm of L. D. Goldsbury's Sons. Plaintiffs replevied the goods from the sheriff, whereupon defendants became substituted for the sheriff in said action, and the issue tried was as to the validity of the mortgage above mentioned, under which plaintiffs claimed title to the property in question. Defendants appeal from a judgment in favor of plaintiffs rendered on trial by the court without a jury.

Argued before VAN BRUNT, P. J., and DANIELS, J.

*Lyon & Smith*, for appellants. *William J. Fanning*, for respondents.

VAN BRUNT, P. J. It appears that prior to June 7, 1889, the plaintiffs had sold and delivered to one L. D. Goldsbury goods amounting in value to $2,850, for which the latter had given his promissory note for $1,050, $900, and $900, payable in four, five, and six months, respectively. At this time said L. D. Goldsbury was a partner of L. D. Goldsbury's Sons, who did a hardware business in the city of New York, and said Goldsbury individually carried on a livery business also in said city. In the early part of June, 1889, none of the said notes having matured, Goldsbury applied to the plaintiffs for a loan of $3,500, and offered to secure the payment thereof, and of the notes above mentioned, by a chattel mortgage upon the stock of goods contained in the store of L. D. Goldsbury's Sons. The plaintiffs thereupon agreed to and did loan to L. D. Goldsbury $3,500, taking from Goldsbury the notes of the firm for that amount, payable in four months, and also a chattel mortgage upon all the property of the firm, to secure the payment of $6,421.49, being the aggregate of the indebtedness of L. D. Goldsbury to them. This mortgage contained a provision that the firm should remain in possession of the property until default in the payment of the notes, or some portion thereof;

and also a provision that, in case the plaintiffs should at any time deem themselves unsafe, they might take possession of the property, and sell the same previous to the time mentioned for the payment of the debt. The mortgagors also covenanted, if required by the mortgagees, to execute and deliver to them a chattel mortgage, with like conditions and covenants, upon all stock and merchandise, or goods of all descriptions, purchased for or brought into the store, to replenish or extend the stock therein. Subsequent to the giving of this mortgage, the business of L. D. Goldsbury's Sons was carried on as before. Goods were sold, and the money received for them was deposited in the Mount Morris Bank, to the credit of L. D. Goldsbury's Sons. Checks were drawn against that account to various persons, as occasion required, and goods were purchased for the store, and paid for out of the money received and the collection of bills. On the 30th of August, a sale of the stock of goods not having been effected, as was contemplated, a new mortgage was executed by L. D. Goldsbury's Sons upon the same property to secure the same indebtedness. This mortgage provided that the property should remain in the possession of the mortgagors, who were thereby appointed agents of the mortgagees, and as such agents were authorized to sell the property, or any part thereof, for cash, and to account for the proceeds to the mortgagees, and to apply the proceeds to the payment of the notes; and the mortgagors agreed to act as such agents, and to account for the proceeds of all sales of such goods as aforesaid. It appeared that, subsequent to the giving of this mortgage, the plaintiff visited the store, and examined the books, and saw what money was taken in. Some members of the firm of L. D. Goldsbury's Sons were paid a salary out of the business during that time, and the expenses of the business were paid out of the moneys received. The firm of Smith, Lyon & Field, for whom the defendants are sureties, being creditors of the firm of L. D. Goldsbury's Sons for goods sold, on the 11th of September, 1889, procured a warrant of attachment, which was levied on the chattels covered by the mortgage. Subsequently a judgment was entered, and execution upon the judgment issued, and the property contained in said store seized thereunder. The plaintiffs replevied the property in this action, and the coroner took the goods; and the question presented upon the trial was whether the mortgages in question were fraudulent as to the creditors of L. D. Goldsbury's Sons. The court having decided that they were not, from the judgment thereupon entered this appeal is taken.

The point is made by the respondent's counsel that certain exceptions which are contained in the case upon appeal cannot be considered, because they do not appear in the notice which was filed containing the exceptions to the findings of the court. Without expressing any opinion upon the necessity of entering an exception to a refusal to find until upon the making up of a case of exceptions upon appeal, it is sufficient to say that we find the exception in the case, and we cannot disregard it. If the party was dissatisfied with the appearance of the exception in the case, he should have moved to have had the case resettled or amended in that regard, if he was entitled to have the exception stricken out. The learned court below has found that this loan of $3,500 was made to the firm of L. D. Goldsbury's Sons. In respect to this we find that an erroneous conclusion was arrived at. It appears distinctly that the loan was to L. D. Goldsbury, and that the plaintiffs had no transactions with the firm of L. D. Goldsbury's Sons prior to this time, and that the money was paid to L. D. Goldsbury, and not to L. D. Goldsbury's Sons, and L. D. Goldsbury deposited the same to his own private account. And therefore it seems to us that the question involved upon this appeal is to be considered upon the basis that this was a loan to L. D. Goldsbury, and that as security for such loan the firm of L. D. Goldsbury's Sons gave their note and the chattel mortgages in question. We do not see, however, because of this condition of affairs, that the plaintiffs did not acquire a lien upon this property

pledged as security for the loan which they made.  This security was offered, and it was upon the faith of it that the money was loaned, and it is immaterial to the holder of the security what became of the money, or how it was applied.    If A. is the owner of a piece of real estate, and B. applies to C. for a loan, and offers as security A.'s mortgage upon his real estate, and such mortgage is accepted, and the money loaned to B., even if A. may have creditors it does not affect the security of the loan, any more than the holder for value of accommodation paper which has been issued by a firm would be precluded, in case of the failure of the firm, from participating in the distribution of its assets.

It is claimed, however, by the appellants that the first mortgage was void on its face as matter of law; also that both mortgages were void, because the mortgagors were left in possession and sold for their own benefit; and that, if the first mortgage is out of the way, the second is void for want of consideration.    It is claimed that the first mortgage was void in law on its face, because of the provision contained therein requiring the mortgagors to execute and deliver a chattel mortgage upon all stock, merchandise, and goods purchased or brought into said store, to replenish or extend the stock therein. In the case of *Brackett* v. *Harvey*, 91 N. Y. 214, a mortgage was under consideration which provided that the mortgagors might use a part of the avails of the sales to replenish their stock, but, if they did, the substituted property was to be placed by monthly renewal mortgages in the room and stead of that which was sold to procure it; and this is all, we think, that seems to have been contemplated by the provision in the first mortgage in the case at bar. In the case cited it was held that such a provision did not make the mortgage void upon its face.    Whether this conclusion seems to be logical or not, it is not material to consider.

It is further urged upon the part of the appellants that the first mortgage is fraudulent in fact as well as in law, in that the evidence shows there was an agreement or understanding which permitted the sale of the mortgaged goods for the benefit of the mortgagors.    It is undoubtedly true that the mortgagors carried on the business in the same way as before, by and with the knowledge of the plaintiffs; and none of the money that was received was paid over to the plaintiffs, nor was any demand even made of them for it.    Debts were paid and goods purchased for sale, for which payments were made from the moneys received and collections of bills; and we are cited to the case of *Southard* v. *Benner*, 72 N. Y. 424, as an authority to show that such circumstances rendered the mortgage void.    In that case, however, the evidence was held to establish the fact that the mortgages were made to secure advances to enable the mortgagor to continue his business, which made it a question for the jury whether this continued dealing with and sales of the mortgaged property was not in pursuance of an arrangement between the parties, contemporaneous with the giving of the mortgage, that the mortgagor should continue his dealings with and sales of the property as before the existence of the mortgage.    In the case at bar, the court, standing in the place of the jury, has refused to find that there was any such understanding; and the court of appeals in the case cited would have sustained the verdict, had the jury found to the contrary of that which they did.    Consequently, as a question of fact, there being ample evidence to sustain the conclusion of the judge, this court will not interfere with it.    But, even if this was a question which was before us now for determination for the first time, we cannot find in the evidence that this mortgage was given in order to enable the mortgagors to continue their business, because it appears that it was in the contemplation of the parties that this business should be sold, and, if the business was continued, it was for the purpose of having it in such condition that it might be sold in bulk,—a very different case from *Southard* v. *Benner*.    In *Frost* v. *Warren*, 42 N. Y. 204, it is expressly held that the fact that the mortgagor continues

to sell the mortgaged property, without the knowledge of the mortgagee, in the absence of proof that this was an agreement between the parties, does not render the mortgage fraudulent in law, as against their creditors.

The claim that, if the first mortgage is void, the second cannot stand, because without consideration, cannot prevail, because, as a condition of the loan by the plaintiffs to L. D. Goldsbury, it was provided that a mortgage upon the property of L. D. Goldsbury's Sons should be given. That meant a valid mortgage, and if for any reason, except an actual fraudulent intent, the first mortgage was defective, the plaintiffs had a right to claim the execution of that agreement by the delivery of the second; and this was all that was done. It was found that the first mortgage would not effectuate the object; that the property could not be sold in bulk, as contemplated. The second was thereupon made, which put the mortgagees in possession of the property, and made all sales for their benefit, the proceeds thereof being applicable to the payment of the debt. There is no question but that, if fraud in fact entered into the arrangement by which the first mortgage was given, then the second would be tainted with the same defect. But, where the object (a lawful one) sought to be accomplished cannot be carried out, there is no reason why, by subsequent instruments, efficacy may not be given to it. We think, however, that neither of the mortgages was fraudulent, and that the judgment must be affirmed, with costs.