## In re BABB.

### No. 765–D.

District Court, E. D. Illinois.

June 4, 1930.

Boyer & Leonard and Dobbins & Dobbins, all of Champaign, Ill., for mortgagee.

George Martin and Green & Palmer, all of Urbana, Ill., for trustee.

Busch & Harrington, of Champaign, Ill., for creditors.

LINDLEY, District Judge.

William A. Pfeffer, mortgagee in a chattel mortgage executed by Harry C. Babb February 16, 1928, securing two notes aggregating $4,500, complains of the order of the referee finding that such mortgage is invalid for the reason that the notes and mortgage in question were given as collateral security for notes aggregating over $6,000 held

by the Bondville State Bank against the bankrupt, and because Pfeffer himself had no personal interest in the security. He was in fact trustee for the bank, and was vice president of the bank.

The referee found that in this situation the mortgage was invalid, and the sole question is as to whether or not such a mortgage is valid against a trustee in bankruptcy, who under the law occupies the position of a creditor armed with an execution.

The statute of Illinois is silent upon the subject, and the Supreme Court of that state has not passed upon the question here presented. The Appellate Court for the First District, in the case of Martin v. Sexton, 112 Ill. App. 199, held that a chattel mortgage running to James B. Gascoigne, trustee, reciting an indebtedness of $4,500, was invalid in view of the fact that the mortgagor was indebted to Gascoigne in no sum whatever. Gascoigne was a stranger to the transaction, and was trustee for a third person, and the mortgage was made to secure rental due that person. If this decision is to be treated as authoritative in Illinois, the court's duty is at an end. But the statutes of Illinois provide that the decisions of the Appellate Court, which is intermediate between the circuit and Supreme Courts of the state, shall not be treated as binding decisions except in the cases wherein they are made. Consequently it cannot be said that the courts of Illinois have authoritatively determined the question presented, and it becomes necessary for this court to determine the law upon the subject.

In 5 R. C. L. p. 419, it is stated that a chattel mortgage may be given to one person for the benefit of another, for instance to the cashier of a bank, to secure a debt to the bank; that a mortgage is not necessarily void because the indebtedness is not fully or accurately described in the instrument; and that an indebtedness upon several promissory notes may be stated in a mortgage as a gross sum of money equal to the principal and interest of the notes without referring to the notes. It is quite commonly held that the consideration of a chattel mortgage is an obligation to secure the performance of which the transfer is made, and that it need not move from the mortgagee to the mortgagor. 11 C. J. p. 447, § 58; Hammon on Illinois Chattel Mtgs., p. 79; Herman on Chattel Mtgs., p. 103; Magruder v. State Bank, 18 Ark. 9; Hincks v. Field, 60 Hun, 576, 14 N. Y. S. 247. In the case of In re Jackson, 18 F.(2d) 462, 464, the Circuit Court of Appeals for the Sixth Circuit held a chattel mortgage given to Jackson, trustee, to secure wages due from the mortgagor to him and five others, valid as against a trustee, saying:

"In the opinion of this court this mortgage to Jackson as trustee is a valid mortgage, not only to the extent of the money due him personally from the mortgagor, but also as trustee for the beneficiaries named therein. Chafey v. Mathews, 104 Mich. 103, 62 N. W. 141, 27 L. R. A. 558; 6 Cyc. 1015; Adams v. Niemann, 46 Mich. 135, 8 N. W. 719."

In Foster v. Berkey, 8 Minn. 351 (Gil. 310), the mortgagor, Symonds, executed a chattel mortgage running to Agnes Foster to secure $7,500. This indebtedness was in the form of three notes to Flavel Foster, who retained the same, and the mortgagee had no interest in the transaction, except as representative of Flavel Foster. The mortgage was attacked by an execution creditor, and the court held the same valid, saying:

"A chattel mortgage given to secure a debt is valid, and entitles the mortgagee to the possession, even as against creditors of the mortgagor levying on the property, notwithstanding the debt is not owned by the mortgagee, either at the time of executing the mortgage, or bringing of action for the possession. * * * But suppose Symonds were defendant in this suit to establish title in the mortgagee, upon what ground could he avoid the mortgage? No accident, fraud, or mistake, is alleged or claimed in regard to the execution of the instrument—would he be permitted to urge that the instrument was invalid, because at the time of the execution of the same, the debt was owned by a third party? It would seem that it would be a matter of indifference to him, who held the security, so long as he received the benefit of it, if reduced to possession by the mortgagee, by having the avails of the same applied on his debt. * * * But if the mortgage is valid as to Symonds, it must be so also as against his creditors, unless vitiated by fraud, since they must claim under him, and can only enforce their process against his property."

In Chafey v. Mathews, 104 Mich. 103, 62 N. W. 141, 142, 27 L. R. A. 558, the mortgagee was the cashier of the bank, and the mortgage ran to him individually and secured $4,000 due the bank. The validity of the mortgage was upheld as against an assignee for the benefit of creditors, the court saying:

"It is insisted by defendant: That the mortgage runs to plaintiff individually, and not to the bank. Its purpose, however, was

fully understood, not only by the mortgagor, but by the creditors. All of the business was done through plaintiff, and no one appears to have been prejudiced by the fact that the mortgage did not run directly to the bank."

In an earlier case, the Michigan court, in Adams v. Niemann, 46 Mich. 135, 8 N. W. 719, 720, said:

"A mortgage to a third person would be as valid as a mortgage to a creditor. The choice of a mortgagee is a matter of convenience, and there can be no wrong, and there may be some advantage, in giving to all of the secured creditors a control over the security in which all are ratably interested, and it would effectually prevent any dispute as to priority."

In Gilmore v. Roberts, 79 Wis. 450, 48 N. W. 522, the mortgagor owed one Gilmore $1,050. Gilmore took three notes from him, payable to the order of Mrs. M. A. Brodeen, and, to secure the same, a chattel mortgage running to the same party. The mortgagee had no interest in the notes other than as representative of the creditor, and though it was claimed that the transaction took this form for the purpose of evading taxes, the validity of the mortgage was upheld; the court saying:

"The mortgage was a mere incident to the notes, and the transfer of the latter to the plaintiff necessarily carried with them the mortgage. * * * This court has recently held that 'the fact that securities were taken by one person in the name of another, who had no interest in them, does not invalidate the securities, or prevent the person beneficially interested from enforcing payment of them by action.'"

Other cases adhering to this rule are Brodie v. Ruttan, 16 U. C. Q. B. 207, and Light v. Hawley, 29 Ont. 25.

The court is of the opinion that upon principle these cases state the true rule. The debt was bona fide, the transaction free of fraud; the mortgage given to Pfeffer was for a sum less than the total amount of the debt; Pfeffer, as an officer of the bank, for the sake of convenience or some other purpose, took the security in his own name, and no reason is apparent as to why the transaction should not be sustained.

Furthermore, before bankruptcy intervened, the mortgagee took possession of the assets, thus perfecting his title against the world. In the absence of any proof that the act of taking possession was under such circumstances as to amount to a preference, it

apparently cured any alleged defect in the mortgage, for it has long been recognized as the law of Illinois that when chattel mortgagees take possession of property mortgaged their title thereto becomes absolute.

Accordingly, the order of the referee is reversed, and the cause is remanded to the referee to proceed in accordance with this memorandum.